UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JACQUELINE KOUTLAKIS,

                        Plaintiff,

            -against-

C P GRILL CORP., *et al.*,

                       Defendants.
-----------------------------------------------------------X

                           **REPORT AND
RECOMMENDATION**
                         19 CV 1669 (DLI) (CLP)

**POLLAK**, United States Magistrate Judge:

      On March 24, 2019, plaintiff Jacqueline Koutlakis ("Ms. Koutlakis" or "plaintiff")

commenced this action against defendants C P Grill Corp. ("C P Grill"), Patricia Bohman

("Bohman"), and Christo Ioannides ("Ioannides") (collectively, the "defendants") alleging

violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, New York Labor

Law §§ 190, *et seq.*, 650, *et seq.*, and relevant regulations, and New York common law. (See

Compl.[1] ¶ 1).

      Currently before the Court is the plaintiff's motion for default judgment filed on

September 15, 2023, and referred to the undersigned for a report and recommendation by the

district court on September 18, 2023. (Pl.'s Mem.[2]; Electronic Order, dated September 18,

2023). It is respectfully recommended that a default judgment be entered against defendants in

the amounts specified below.

<u>FACTUAL BACKGROUND</u>

      Plaintiff is a resident of Queens County, New York, and was employed by defendants as

a server and restaurant employee from approximately August 28, 2018, to on or about January 7,

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed on March 24, 2019 (ECF No. 1).
[2] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in Support of plaintiff's Motion for
Default Judgment, filed on September 15, 2023 (ECF No. 81-1).

2019.  (Compl. ¶¶ 6, 26, 27).  C P Grill is a domestic corporation organized under New York State law, which operates a Greek restaurant located at 131-02 14th Avenue, College Point, NY 11356.  (Id. ¶¶ 9, 10).  During the relevant period, C P Grill allegedly had employees engaged in interstate commerce and had an annual gross volume of sales not less than $500,000.  (Id. ¶¶ 13, 15).  Defendant Bohman and defendant Ioannides are alleged to be the owners, managers, or agents of C P Grill and to be covered employers under the FLSA and NYLL.  (Id. ¶¶ 16, 20, 21, 25).  Plaintiff alleges that at all times relevant to this action, defendants Bohman and Ioannides were responsible for making decisions regarding payroll and employment practices on behalf of C P Grill, including hiring and firing employees.  (Id. ¶¶ 17, 23).  Plaintiff further alleges that defendants Bohman and Ioannides were "actively involved in the day-to-day operations of CP Grill and oversaw the work of Plaintiff and other employees."  (Id. ¶ 24).

According to plaintiff, she worked for defendants from August 2018 until January 2019, except for the period of October 22, 2018, through November 2, 2018, when she did not work due to illness.  (Id. ¶¶ 26, 31).  During the time she worked for defendants, she worked seven days per week and "consistently worked in excess of 75 hours per week."  (Id. ¶¶ 29, 33).  She claims that from August 28, 2018, through October 22, 2018, she worked Monday through Thursday from 10:30 a.m. to 12:00 a.m., Friday and Saturday from 11:30 a.m. to 1:00 a.m., and Sunday from 12:00 p.m. to 11:00 p.m., with a one-hour break during each shift.  (Id. ¶ 30).  Plaintiff alleges that from November 3, 2018, until the end of her employment on January 7, 2019, she maintained the same schedule but took off one half-day each week.  (Id. ¶ 32).  Regarding her wages, plaintiff alleges that "prior to the start of her employment," she "made an agreement with Defendant Ioannides whereby Ioannides, on behalf of Defendants, agreed to pay Plaintiff a salary of $1,000 per week for her regular hours of work."  (Id. ¶ 34).  She states that at

the time of the agreement, Ioannides "failed to mention the substantial overtime required by the job." (Id.)  She further states that, despite this agreement, she was paid "in miscellaneous amounts through her employment"— $1,000 on September 3, 2018, $1,000 on September 10, 2018, $1,000 on September 18, 2018, $500 on October 11, 2018, and $280 on November 2, 2018—and she was never paid for her work between November 2, 2018, and January 7, 2019. (Id. ¶¶ 35, 37).  Plaintiff claims that she never received overtime compensation for hours worked over 40 in a workweek, nor did she ever receive spread-of-hours compensation despite the duration of her shifts regularly exceeding 10 hours per day.  (Id. ¶¶ 40, 41).  Further, plaintiff claims that she was paid in cash and was never provided with a proper wage statement, written notice of her rate of pay, or other information required by NYLL §§ 195(1) and (3).  (Id. ¶¶ 36, 42–45).

In sum, plaintiff asserts claims for (1) violations of FLSA and NYLL minimum and overtime wage requirements (First, Second, Third, and Fourth Causes of Action); (2) violations of the NYLL's spread-of-hours premium, wage statement, and wage notice requirements (Fifth, Sixth, and Seventh Causes of Action); and (3) breach of contract (Eighth Cause of Action).  (Id. ¶¶ 52–75).  Plaintiff's motion seeks damages in the form of minimum, overtime, and spread-of-hours wages, liquidated damages, statutory damages, prejudgment interest, and attorney's fees and costs.  (Pl.'s Mem.[3] at 20–24).

## PROCEDURAL HISTORY

### I.    Default

Defendant C P Grill was served on April 26, 2019, with the answer due May 17, 2019. (ECF No. 6).  C P Grill did not respond to plaintiff's Complaint by the deadline and accordingly,

---

[3] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law, filed in support of her Motion for default judgment on September 15, 2023.  (ECF No. 81-1).

on May 20, 2019, plaintiff requested that a Certificate of Default be entered against C P Grill. (ECF No. 7). On May 24, 2019, the Clerk of Court entered default as to C P Grill. (ECF No. 10).

Defendant Ioannides was served on May 15, 2019, with the answer due June 5, 2019. (ECF No. 8). Defendant Bohman was served on May 16, 2019, with the answer due June 6, 2019. (ECF No. 9). On May 28, 2019, a Notice of Appearance was filed on behalf of all defendants, and counsel requested an extension of time to answer to June 19, 2019. (ECF Nos. 11, 12). The extension was granted. (Electronic Order dated 5/28/2019).

However, counsel for defendants never filed an answer and instead filed a Notice of Motion to Withdraw as attorney for all defendants on June 26, 2019. (ECF No. 18). The motion was granted on August 19, 2019; thereafter, the corporate defendant was directed to obtain new counsel, and the individual defendants were directed to obtain new counsel or inform the court that they would proceed *pro se*. (ECF No. 21). New counsel for defendant C P Grill filed a notice of appearance on January 24, 2020. (ECF No. 31).

On June 11, 2021, default was entered against both individual defendants for failure to appear at conferences on numerous occasions. (ECF Nos. 45, 49, 50). On July 8, 2021, plaintiff filed a Motion for Default Judgment against the individual defendants Ioannides and Bohman. (ECF No. 53). The motion was denied without prejudice to renew if mediation between plaintiff and defendant C P Grill was unsuccessful. (Electronic Order dated 3/29/2022). Plaintiff filed a second motion against the individual defendants on September 26, 2022. (ECF No. 68).

While plaintiff's second motion for default judgment against defendants Ioannides and Bohman was pending, discovery commenced between plaintiff and C P Grill under the supervision of the undersigned. However, on October 5, 2022, due to defendant C P Grill's

failure to comply with discovery obligations, the Court set a deadline of October 12, 2022, for defendant to produce discovery or have counsel withdraw.  (See Minute Entry dated 10/5/2022). The Court stated that if no discovery was provided by the deadline, discovery would be closed. (Id.)  On October 20, 2022, due to defendant's failure to provide discovery, the Court Ordered discovery closed.  (ECF No. 70).  The Court issued a Report and Recommendation on April 11, 2023, recommending that default enter against C P Grill for failure to defend, which was adopted by the district court on April 27, 2023.  (ECF No. 71; Electronic Order dated 4/27/2023).  The Clerk entered default against C P Grill on May 26, 2023.  (ECF No. 75).

On May 18, 2023, plaintiff filed an amended second motion for default judgment against the individual defendants, which had been pending since September 2022, to add the corporate defendant C P Grill.  (ECF No. 73).

On July 12, 2023, this Court issued a Report and Recommendation, recommending that the September 2022 and May 2023 motions be denied without prejudice to renew in compliance with the Court's Local Rules.  (ECF No. 79).  The Court noted that the plaintiff had failed to attach the certificates of default, a copy of the Complaint, or a proposed form of default judgment to the May motion, and thus likely failed to mail these documents to defendants.  (Id. at 6–7).  Plaintiff also did not append a proposed form of default judgment to the September motion.  (Id.)  Additionally, there was inadequate support for plaintiff's request for attorney's fees, and there were inconsistencies in plaintiff's calculation of damages across her filings.  (Id. at 9–11).  The district court adopted the Report and Recommendation on August 25, 2023. (Electronic Order dated 8/25/2023).

II.   Instant Motion

On September 15, 2023, plaintiff filed a renewed motion for default judgment.  (ECF No. 81).  In support of her Motion, plaintiff filed her Memorandum of Law (ECF No. 81-1), a

proposed default judgment (ECF No. 82), copies of the Complaint and certificates of default (ECF Nos. 81-2, 81-3, 81-4, 81-5), an affidavit from Ms. Koutlakis ("Koutlakis Decl."[4]), and an exhibit setting forth plaintiff's damage calculations. (ECF No. 81-9). In support of her counsel's application for attorney's fees and costs, plaintiff also attached a copy of her attorneys' billing records. (ECF Nos. 81-6, 81-7). On September 18, 2023, the district court referred the Motion to the undersigned for a Report and Recommendation. (Electronic Order dated 9/18/2023).

DEFAULT JUDGMENT

I.    Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-part procedure for entering a default judgment. First, the Clerk of Court enters a default by noting the defaulting party's failure to respond or appear. Fed. R. Civ. P. 55(a). Second, if the defaulting party then fails to vacate the entry of default pursuant to Rule 55(c), the appearing party may seek a default judgment to establish liability and, if proven, damages. Fed R. Civ. P. 55(b).

In determining whether a default judgment should be entered, the Second Circuit has cautioned that a default judgment is an "extreme sanction" that "must remain a weapon of last, rather than first, resort." Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981); see also Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 127 v. Frank Torrone & Sons, Inc., No. 14 CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 3, 2018), adopting report and recommendation, 2018 WL 6161655 (E.D.N.Y. Sept. 4, 2018). While the Second Circuit has

---

[4] Citations to "Koutlakis Decl." refer to the Declaration of Jacqueline Koutlakis in support of plaintiff's motion for default judgment, filed on September 15, 2023 (ECF No. 81-8).

recognized the pressure on district courts "to dispose of cases that . . . delay and clog [their] calendar[s]," district courts must "maintain a balance between clearing [their] calendar[s] and affording litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and "doubt[s] should be resolved in favor of the defaulting party." Id.; see also Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

When a defendant defaults, the defendant is typically deemed to have admitted every well-pleaded allegation of the complaint, "except those claims relating to damages." Jeremiah v. 5 Towns Jewish Times, Inc., No. 22 CV 5942, 2023 WL 6593997, at *3 (E.D.N.Y. Aug. 9, 2023), report and recommendation adopted, 2023 WL 5703698 (E.D.N.Y. Sept. 5, 2023) (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). However, the Court must review the allegations in the Complaint to determine if the elements of each claim have been adequately pleaded. See id.; Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010), report and recommendation adopted, id. at 151 (explaining that "it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief").

II.    Default

Defendants Ioannides and Bohman were properly served with the summons and Complaint on May 15 and May 16, 2019, respectively. (ECF Nos. 8, 9). Defendants never filed an answer or responded to the complaint. While defendants were initially represented by counsel, after their counsel withdrew, they failed to appear for conferences in this action, and the Clerk of Court entered default against them. (ECF No. 50).

7

Defendant C P Grill was properly served on April 26, 2019. (ECF No. 6). As detailed above, while C P Grill originally did respond, it ultimately failed to provide discovery, and on April 11, 2023, the Court issued a recommendation that default enter against C P Grill for failure to defend, which was adopted by the district court on April 27, 2023. (ECF Nos. 70, 71; Electronic Order dated 4/27/2023).

None of the defendants have opposed the instant motion for default judgment. It is therefore beyond dispute that defendants are in default. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (holding that defendant's default was "crystal clear" when it failed to oppose the plaintiff's motion for a default judgment).

III.    Adequacy of Pleadings

Given that defendants are clearly in default, the Court now considers whether each of plaintiff's claims have been adequately pleaded, accepting plaintiff's factual allegations as true. See Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d at 153.

A.    FLSA Coverage

To establish a claim under the FLSA, a plaintiff must prove the following: 1) the defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce;" 2) the plaintiff is an "employee" within the meaning of the FLSA; and 3) the employment relationship is not exempted from the FLSA. See Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Found. v. Secretary of Lab., 471 U.S. 290, 295 (1985)); see also Rosenbaum v. Meir, No. 20 CV 4520, 2023 WL 2305960, at *4 (E.D.N.Y. Mar. 1, 2023).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).

Plaintiff alleges that from August 28, 2018, through approximately January 7, 2019, she worked for C P Grill. (Compl. ¶ 26). She also alleges that C P Grill was a covered employer as defined under the FLSA, that it engaged in interstate commerce, and that it had an annual gross volume of sales in excess of $500,000. (Id. ¶¶ 13, 15). In support of that allegation, plaintiff states that "CP Grill used goods and materials produced in interstate commerce, such as food and food ingredients manufactured out of state, particularly in Greece, and distributed in New York, and employed numerous individuals who handled these goods and materials." (Id. ¶ 13). For purposes of a default judgment motion, these allegations are sufficient to establish that C P Grill is an "enterprise engaged in commerce or in the production of goods for commerce." See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (stating that it was "reasonable to infer" that a "Peruvian restaurant with an eat-in dining area and over $500,000.00 in annual sales" utilized a "wide variety of materials to operate," at least some of which were likely "moved or were produced in interstate commerce").

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).[5] "[W]hether there is an employer-employee relationship between an individual defendant and an FLSA plaintiff" under that definition of employer depends, at least in substantial part, upon "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled

---

[5] "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a).

employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 35 (quoting Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984)).

Plaintiff alleges that at all times relevant to this action, defendants Bohman and Ioannides were the owners, managers, or agents of the store, were responsible for hiring and firing employees, and supervised and directed employees. (Id. ¶¶ 17, 18, 23, 24). Plaintiff also asserts that within the same period, defendants Bohman and Ioannides made decisions regarding payroll and compensation practices. (Id.) In the context of this Motion, in which defendants have elected not to challenge plaintiff's claims, the Court accepts these uncontested allegations as true. Thus, the Court finds defendants Bohman and Ioannides are also "employers" as defined by the FLSA.

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); see also Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098. To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). The Complaint alleges that plaintiff was employed by defendants, who, as noted above, qualify as "employers" within the meaning of the FLSA. Moreover, there is nothing to suggest any basis for exempting the employment relationship at issue from the FLSA's provisions. See 29 U.S.C. § 213(a) (setting forth the exemptions from the minimum wage requirements). The Court therefore concludes

10

that, at least for purposes of a default judgment motion, plaintiff has adequately established coverage under the FLSA.

B.    FLSA Minimum Wage Claims

Plaintiff alleges that "Defendants paid Plaintiff. . . in amounts below the applicable statutory minimum wage" for her hours worked, in violation of the FLSA. (Compl. ¶ 53). The FLSA requires "[e]very employer" to "pay to each of his [covered] employees . . . wages at" a specified rate. 29 U.S.C. § 206(a). Given that plaintiff has already established coverage under the FLSA, to establish a minimum wage claim under the FLSA, plaintiff need only prove that defendant failed to pay the mandated minimum wage. See id.

The statute of limitations under the FLSA is two years or three years where defendants' violations of the FLSA were willful, including in cases of default. 29 U.S.C. § 255(a). Therefore, all of plaintiff's FLSA claims are timely since they accrued on or after August 28, 2018, and the Complaint was filed on March 29, 2019.

In all relevant periods, the federal minimum wage was $7.25 per hour. See 29 U.S.C. § 206(a)(1). As noted earlier, plaintiff alleges that during her period of employment with defendants, she was paid $1,000 on September 3, 2018, $1,000 on September 10, 2018, $1,000 on September 18, 2018, $500 on October 11, 2018, and $280 on November 2, 2018. (Id. ¶¶ 35, 37). To determine whether plaintiff adequately pleads FLSA minimum wage claims, the Court must determine her straight-time hourly wage by dividing the total pay for the period by the total number of hours worked for each period of pay. Alfonso v. Mougis Logistics Corp., No. 21 CV 5302, 2021 WL 5771769, at *4 (S.D.N.Y. Dec. 6, 2021) (holding that for purposes of an FLSA minimum wage claim, "an employee's average hourly wage," or straight-time hourly wage, "is calculated 'by dividing his total remuneration for employment in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was

11

paid.'") (quoting 29 C.F.R. § 778.109); Cruz v. AAA Carting & Rubbish Removal, Inc., 116 F. Supp. 3d 232, 242–43 (S.D.N.Y. 2015)).

For the period between the start of plaintiff's employment and September 17, 2018, plaintiff alleges to have been paid $1,000 per week. (Compl. ¶ 35; ECF No. 81-9). According to the work schedule provided by plaintiff, she worked for approximately 85 hours per week. (Id. ¶ 30). Accordingly, dividing the total amount received for the week ($1,000) by the total number of hours worked (85), plaintiff was effectively paid an hourly wage of $11.76, from the start of the claim period, August 28, 2018, through September 17, 2018. Given that the minimum federal hourly wage was $7.25 during this period, the Court concludes that plaintiff has not proved that she received payments below federal minimum wage requirements during the period between August 28, 2018, and September 17, 2018.

For the weeks beginning on September 18, 2018, September 25, 2018, and October 2, 2018, plaintiff worked 85 hours each week and did not receive any payment. (Id. ¶¶ 30, 35). Accordingly, she has adequately stated a claim for minimum wage violations during those three consecutive weeks. For the following week, beginning on October 9, 2018, plaintiff allegedly received $500.00 in wages from defendants for 85 hours of work. (Id.) Accordingly, her hourly wage for this period was $5.88. This hourly wage fails to meet the federal requirement of $7.25 per hour. Thus, for this week, plaintiff has stated a claim for minimum wage violations under the FLSA. Plaintiff again received no payment at all for her 85 hours of work for the week beginning on October 16, 2018, and therefore, she has adequately stated a claim for FLSA minimum wage violations for that week. (Id.)

Given that plaintiff did not work due to illness between October 23 through November 2, 2018, she does not qualify for an FLSA minimum wage claim for the week beginning on

October 23.  (Id. ¶ 31).  The following week, beginning on October 30, 2018, taking into account the fact that her first day of work that week was on November 3, 2018, plaintiff allegedly worked for 35 hours[6] and received $280.  (Id. ¶ 30-32, 35).  Thus, her straight-time hourly wage for that week, calculated by dividing $280 by 35 hours, was $8.00 an hour, which is higher than the federal minimum wage of $7.25.  Therefore, for that week, plaintiff has not established a claim for FLSA minimum wage violations.

Finally, plaintiff alleges that she did not receive any payment from defendants for her work between November 3, 2018, and the end of her employment with defendants on January 7, 2019, even though she claims to have worked 78 hours per week during this period.  (Id. ¶¶ 30, 32, 37; ECF No. 81-9).  Accordingly, defendants failed to meet federal minimum wage requirements for this period of plaintiff's employment.  Therefore, although plaintiff was paid at a rate above the federal minimum wage rate from the start of the claim period, August 28, 2018, until September 17, 2018, and for the week beginning on October 30, 2018, she has adequately plead underpayments of the federal minimum wage during the periods September 18, 2018 through October 22, 2018, and from November 6, 2018 until January 7, 2019, when her employment ended.

C.    FLSA Overtime Claims

The FLSA provides that "no employer shall employ any of his [covered] employees . . . for a workweek longer than forty hours. . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a).  "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek

---

[6] Plaintiff's damages chart (ECF No. 81-9) incorrectly lists this as 36 hours.  However, her regular hours for Saturday (12.5), Sunday (10), and Monday (12.5), summed, equals 35 hours.  (Compl. ¶ 30).

as well as some uncompensated time in excess of the 40 hours." Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013).

Overtime is calculated at a rate of one and one-half times the employee's regular hourly pay for work performed in excess of 40 hours per week.  29 U.S.C. § 207(a).  "However, if an employee's 'regular rate' is below the required minimum wage, the employee's overtime rate is calculated using the required minimum wage as the 'regular rate.'" Coulibaly v. Millennium Super Car Wash, Inc., No. 12 CV 4760, 2013 WL 6021668, at *5 (E.D.N.Y. Nov. 13, 2013).

The regular hourly rate for purposes of FLSA overtime claims is calculated separately from the straight-time hourly wage rate calculated for purposes of FLSA minimum wage claims. When a plaintiff is paid on a weekly basis, "the regular hourly rate is calculated by 'dividing the salary by the number of hours which the salary is intended to compensate.'" Anzures v. Maredin Rest. Corp., No. 22 CV 2798, 2024 WL 1376812 at *9 (E.D.N.Y. Jan. 24, 2024) (citing 29 C.F.R. § 778.113(a)), report and recommendation adopted, 2024 WL 1367963 (E.D.N.Y. Apr. 1, 2024).  For cases in which an employee worked for over 40 hours per week, "[u]nder the FLSA, '[t]here is a rebuttable presumption that. . . a weekly salary represents compensation for the first 40 hours,'" and "the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." Id. at *10 (quoting Berrios v. Nicholas Zito Racing Stable, Inc., 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012)); see also Saldarriaga Saldarriaga v. IND Glatt, Inc., No. 17 CV 2904, 2019 WL 1332887 at *3 (E.D.N.Y Mar. 25, 2019) (finding that the employer must provide evidence of an employer-employee agreement demonstrating that both parties agreed to a weekly salary that includes a regular rate and an overtime premium).  In the instant case, since the defendants are in default and have not provided any rebuttal, the Court

14

presumes plaintiff's weekly salary was intended to compensate 40 hours per week.  Anzures v. Maredin Rest. Corp., 2024 WL 1376812 at *10.

Thus, in order to calculate plaintiff's "regular rate of pay," plaintiff's weekly salary is divided by 40 hours.  Id.  As noted earlier, for the period between the start of plaintiff's employment on August 28, 2018, and September 17, 2018, plaintiff alleges she was paid $1,000 per week, resulting in a regular rate of $25 per hour, and worked approximately 85 hours, or 45 hours more than 40 hours per week.  (Compl. ¶¶ 30, 35).  To satisfy overtime payment requirements, defendants should have paid plaintiff $37.50 for each of the 45 hours she worked overtime.  Using this overtime rate of $37.50 and multiplying by 45 hours of overtime per week results in an amount owed of $1,687.50 in overtime wages.  When added to the $1,000 owed in regular hourly wages ($25 x 40) per week, plaintiff should have been paid a total of $2,687.50 per week.  Given that plaintiff allegedly received $1,000 per week between August 28, 2018, through September 17, 2018, the Court concludes that plaintiff did not receive adequate overtime compensation between August 28, 2018, and September 17, 2018.

As noted above, from September 18, 2018, through January 7, 2019, with the exception of the week beginning on October 23, 2018, during which she was sick, and the following week, beginning on October 30, 2018, during which she worked only 35 hours, plaintiff alleges that she worked over forty hours per week.  Given that she was not even paid the minimum wage rate, the Court concludes that from September 18, 2018, through October 22, 2018, and from November 6, 2018, through the end of the claim period on January 7, 2019, she also was not paid adequate overtime compensation.

D.    NYLL Minimum Wage, Overtime, and Spread-of-Hours Claims

1.    Coverage

To recover under the NYLL, the plaintiff must prove that he or she is an "employee"

entitled to NYLL's protections and that the defendant is an "employer" as defined by the statute.

See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407–09 (E.D.N.Y. 2009).  The NYLL's definition

of "employer" mirrors that of the FLSA, with the exception that the NYLL has no gross sales or

interstate commerce requirement.  See NYLL § 651(6); Singh v. Mowla, No. 19 CV 4687, 2022

WL 17820099, at *8, n.8 (E.D.N.Y. Sept. 30, 2022).  Similarly, an "employee" is simply

defined, in part, as "any individual employed or permitted to work by an employer in any

occupation."  NYLL § 651(5).

For the same reasons noted above with respect to plaintiff's FLSA claims, the Court

concludes that plaintiff fits within the definition of "employee"; and defendants satisfy the

definition of "employer" under the NYLL.  There does not appear to be any exception to the

definition of "employee" that applies in this case.  See NYLL § 651(5)(a)–(p).

2.    Underpayments

Plaintiff alleges that defendants violated the NYLL's overtime wage, minimum wage,

and spread-of-hours provisions.  With respect to minimum wage requirements, like the FLSA,

the NYLL establishes certain minimum wage rates that have increased over set periods of time.

See 12 N.Y.C.R.R. § 146-1.2.  The applicable minimum wage rate for the time period of

plaintiff's claims is dependent on whether she worked for a "[l]arge employer[]" of eleven or

more employees, or a "[s]mall employer[]" of ten or fewer employees.  NYLL § 652(1)(a)(i)–

(ii); see also 12 N.Y.C.R.R. § 146-1.2(a)(1)(i)(a)–(b).  Plaintiff alleges that at all times relevant,

C P Grill had approximately 11 employees.  (Compl. ¶ 11).  The New York City minimum wage

rate for large employers from the start of the claim period, August 28, 2018, through December

30, 2018, was $13.00 per hour. From December 31, 2018, through the end of plaintiff's employment with defendants, in January 2019, the rate was $15.00 per hour. NYLL § 652(1)(a)(i).

Since the NYLL minimum wage rate was uniformly higher than the FLSA minimum wage rate, for the weeks that plaintiff states a minimum wage claim under the FLSA, she also states a minimum wage claim under the NYLL. The week that plaintiff worked no hours because she was sick, she does not state a minimum wage claim under the NYLL. Therefore, the Court only needs to analyze the timeframe between August 28, 2018, and September 17, 2018, and the week beginning on October 30, 2018. As noted above, plaintiff's hourly wage rate paid for all hours worked from the start of the claim period, August 28, 2018, until September 17, 2018, was $11.76. For the week beginning on October 30, 2018, as noted above, plaintiff's hourly wage rate paid was $8.00. Since these rates are lower than the applicable minimum wage rate of $13.00 per hour under the NYLL, plaintiff has stated a minimum wage claim under the NYLL for these weeks.

With respect to overtime wage requirements, like the FLSA, the NYLL requires that employees be compensated at an overtime rate of one and one-half times their regular hourly pay for time worked in excess of 40 hours in a week. See 12 N.Y.C.R.R. § 146-1.4. The elements of an NYLL overtime wage claim largely mirror those of an FLSA overtime wage claim. Similar to the FLSA, the NYLL carries "a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement." Pinovi v. FSS Enters., Inc., No. 13 CV 2800, 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015). Furthermore, New York hospitality regulations, which apply to restaurant employees, state that if an employer does not pay an hourly rate, regular pay must be calculated by "dividing the employee's weekly earnings

… by the lesser of 40 hours or the actual number of hours worked by that employee during the workweek." 12 N.Y.C.R.R. § 146-3.5.

Therefore, the determination of overtime liability is the same under the FLSA and NYLL. Accordingly, the Court concludes that plaintiff's wages also failed to comply with NYLL overtime wage requirements from August 28, 2018, through October 22, 2018, and from November 6, 2018, through the end of the claim period on January 7, 2019.

The NYLL also provides that covered employees are entitled to an additional hour's pay at the basic minimum hourly wage rate for any day worked during which the "spread of hours," which is "the interval between the beginning and end of an employee's workday," exceeds 10 hours. 12 N.Y.C.R.R. § 146-1.6. Once coverage under the NYLL has been established, as here, a plaintiff asserting a spread-of-hours claim need only show that she worked a shift of a total duration greater than ten hours per day for one or more days without adequate compensation. See Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 339 (S.D.N.Y. 2005). In her Complaint, plaintiff claims that she regularly worked shifts of a duration exceeding 10 hours per day, yet she never received "an extra hour's pay at minimum wage during [these] occasions." (Compl. ¶ 41). In the context of this Motion, in which defendants have elected not to challenge plaintiff's claims, the Court accepts these uncontested allegations as true. Thus, the Court concludes that, at least for purposes of a default judgment motion, plaintiff has adequately pleaded the requirements of the NYLL's spread-of-hours claim.

E.    NYLL Wage Statement and Notice Claims

Under the NYLL's notice and wage statement provisions—known collectively as the "Wage Theft Prevention Act" or "WTPA"—employers are required to give each employee a notice of their rate of pay at the time of hiring and a wage statement listing specific information with each paycheck. NYLL §§ 195(1)(a), (3). The notice must contain the rate or rates of pay,

whether the employee was to be paid by the hour, shift, day, or week, any allowances claimed as part of the minimum wage, the regular pay day, the name of the employer, the physical address of the employer's main office, and the employer's telephone number, in both English and the employee's primary language, if different from English.  Id. § 195(1)(a).  The wage statement must include "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions;" and certain allowances.  Id. § 195(3).

The Supreme Court explained in TransUnion LLC v. Ramirez, 594 U.S. 413, 426 (2021), that the "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."  The Supreme Court clarified that "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."  Id. at 427.  Courts in this Circuit, applying TransUnion LLC v. Ramirez to the wage statement and wage notice provisions of the NYLL, have since required plaintiffs to identify the harm caused to them by these violations—i.e., to allege and ultimately prove that they suffered a specific injury as a result of defendants' noncompliance with the notice and wage statement provisions—and have concluded that a statutory violation alone is insufficient.  See Ramirez v. Urion Constr. LLC, 674 F. Supp. 3d 42, 45 (S.D.N.Y. 2023) (declining to award statutory damages and dismissing NYLL wage statement and notice claims on motion for default judgment due to lack of standing), adopting report and recommendation, id. at *45 (S.D.N.Y. Apr. 28, 2023).

In the instant case, plaintiff merely alleged that defendants "failed to provide Plaintiff with wage statements throughout her employment" and "failed to provide Plaintiff at the time of hiring or at any point thereafter, a notice containing the rate of pay and basis thereof." (Compl. ¶¶ 69, 72).[7]  In the Complaint, she has not alleged any specific harm which flowed from defendants' noncompliance with the NYLL provisions, and she therefore has not demonstrated her standing to bring these claims.  In the absence of allegations that, if true, would establish such standing, the Court cannot conclude that plaintiff has adequately pleaded her wage statement and wage notice claims.  Accordingly, the Court respectfully recommends that the district court deny the Motion with respect to those claims without prejudice, and that plaintiff be granted leave to file an amended complaint alleging concrete injury.

F.    Breach of Contract

Plaintiff also alleges a breach of contract claim, based on defendants' failure to adhere to the oral agreement between plaintiff and defendants under which defendants agreed to pay plaintiff "at a rate of $1,000 per week for her regular hours of work." (Compl. ¶¶ 74-78).  In order to allege a claim for breach of contract under New York common law, plaintiff must allege that: 1) the parties entered into an agreement; 2) plaintiff performed her obligations under the agreement; 3) defendants failed to perform; and 4) plaintiff suffered damages as a result. VisionChina Media Inc. v. Shareholder Repr. Servs., LLC, 109 A.D.3d 49, 58, 967 N.Y.S.2d

---

[7] In her Declaration, plaintiff alleges that "[d]efendants intentionally failed to provide" her with wage statements and notices in order "to take advantage" of plaintiff's "relative lack of sophistication in wage and hour laws" and "to avoid paying" plaintiff "properly." (Koutlakis Decl. ¶¶ 14-18).  As with her Complaint, plaintiff's Declaration does not adequately establish standing because it does not allege that defendant's wrongdoing caused plaintiff's injury.  Even if plaintiff's declaration had demonstrated proof of injury caused by the statutory violations, standing under the WTPA is "based solely on the allegations of the complaint or the complaint and exhibits attached to it." Isayeva v. Diamond Braces, No. 22 CV 4575, 2014 WL 1053349 at *16 (S.D.N.Y. Mar. 11, 2024) (citing Carter v. HealthPort Technologies, LLC, 822 F 3d 47, 56 (2d Cir. 2016)).

338, 343 (1st Dep't 2013); see also McEssy v. Gray, No. 15 CV 1462, 2016 WL 10518458, at *10 (N.D.N.Y. Aug. 11, 2016).

In the Complaint, plaintiff alleges that defendants and plaintiff entered an "enforceable agreement" in which "Plaintiff agreed to perform work for Defendants and, in turn, be renumerated at a rate of $1,000 per week for her regular hours of work." (Compl. ¶ 75). Plaintiff alleges that she "satisfactorily performed work" throughout the claim period, "thereby performing fully her obligations under the contract." (Id. ¶ 76). Plaintiff also alleges that except for the first three weeks of her employment, "Defendants failed to renumerate Plaintiff at the agreed upon rates," and that, as a consequence of this breach, she "sustained damages." (Id. ¶ 77-78). Other courts in this Circuit have found that oral agreement employment contracts constituted valid contracts under New York common law. Berrezueta v. Royal Crown Pastry Shop, Inc., No. 12 CV 4380, 2013 WL 6579799 at *7 (finding that "the oral agreement" between plaintiff and defendants "constituted an at-will employment contract."); Chuchuca v. Creative Customs Cabinets Inc., No. 13 CV 2506, 2014 WL 6674583 at *10 (E.D.N.Y. Nov. 25, 2014) (concluding that the court could "reasonably infer a common law contract claim for breach of an oral contract under New York law"). Indeed, such oral employment contracts do not fall within the statute of frauds, which requires contracts to be written down if they cannot be completed in one year. Guilbert v. Gardner, 480 F.3d 140, 151 (2d Cir. 2007) (holding that oral employment agreements which "can be terminated by either party for any reason or without reason," are not proscribed by the Statute of Frauds since they "may therefore usually be completed within a year"). Accordingly, the Court finds that plaintiff has adequately pleaded a claim for breach of contract under New York law.

<u>DAMAGES</u>

Having found that plaintiff is entitled to default judgment as to at least some of her claims, the Court now considers her request for damages.[8]

Once the court determines that default judgment should enter, the plaintiff must still establish her entitlement to the damages sought.  <u>See</u> <u>Flaks v. Koegel</u>, 504 F.2d 702, 707 (2d Cir. 1974) (holding that "[w]hile a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation"); <u>Wing v. East River Chinese Rest.</u>, 884 F. Supp. 663, 669 (E.D.N.Y. 1995) (explaining that "[a]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded").  Unlike with the question of liability, a defaulting defendant is not deemed to have admitted all well-pleaded allegations concerning damages.  <u>See</u> <u>Jeremiah v. 5 Towns Jewish Times, Inc.</u>, 2023 WL 6593997, at *3.

I.    <u>Evidentiary Standards</u>

In connection with her claims under the FLSA and NYLL, plaintiff seeks damages for unpaid overtime, unpaid minimum wage, and unpaid spread-of-hours compensation.  (Pl.'s Mem.).  According to plaintiff, from August 28, 2018, through January 7, 2019, she worked for approximately 78 to 85 hours per week, with the exception of a 10-day period in which she missed work due to illness.  (Koutlakis Decl. ¶ 9; Compl. ¶¶ 30–33).  She asserts that defendants had agreed to pay her $1,000 per week prior to the start of her employment, yet she only received this agreed upon rate for the first three weeks of her employment, after which she received one $500 payment on October 11, 2018, and one $280 payment on November 2, 2018.  (Koutlakis

_____

[8] Since the Court concludes that plaintiff has not adequately stated an injury in connection with her WTPA claims, the Court does not consider her request for damages with respect to those claims.

Decl. ¶¶ 10-11).  For the remainder of the weeks worked, Ms. Koutlakis alleges that she was not paid at all.  Ms. Koutlakis alleges that she was always paid in cash, never received a paycheck or wage notice, and was never required to clock in or out.  (Compl. ¶ 36; Koutlakis Decl. ¶¶ 14-15).

Beyond her declaration, plaintiff has not provided records to verify her claims.  Under the FLSA, an employee-plaintiff generally "has the burden of proving that he performed work for which he was not properly compensated."  Santillan v. Henao, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)), report and recommendation adopted, id. at 289–301.  The Supreme Court in Anderson v. Mt. Clemens Pottery Co. noted, however, that "[e]mployees seldom keep . . . records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy."  328 U.S. at 687.  By defaulting, defendants have "deprived the plaintiff of the necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove [] damages."  Santillan v. Henao, 822 F. Supp. 2d at 294.  "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Id. (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687).

In light of this holding, courts in this Circuit have held that where a defendant-employer defaults, a plaintiff may meet this burden of proof "by relying on his recollection alone."  Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d at 335.  Otherwise, defendants in FLSA cases would stand to benefit from choosing not to cooperate with discovery or litigation efforts, and "[o]ne should not be permitted to profit by its own wrongful act."  Boyke v. Superior Credit Corp., No. 01 CV 290, 2006 WL 3833544, at *5 (N.D.N.Y. Dec. 28, 2006) (citing 29 U.S.C. § 211(c), which requires that employers "make, keep, and preserve . . . records of the persons employed by

23

him and of the wages, hours, and other conditions and practices of employment"); see also Park

v. Seoul Broad. Sys. Co., No. 05 CV 8956, 2008 WL 619034, at *7 (S.D.N.Y. Mar. 6, 2008)

(explaining that the Supreme Court has held that courts should apply a "special burden-shifting

standard" where employers fail to comply with this statutory duty of record keeping) (citing

Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687).

New York law also requires that employers keep various, detailed employment records in

their course of business relating to employees' rates of pay, hours, dates of work, and payroll,

among other information.  See NYLL § 195(1) (requiring an employer to "provide his or her

employees, in writing . . . a notice containing . . . the rate or rates of pay and basis thereof,

whether paid by the hour, shift, day, week, salary, piece, commission, or other"); NYLL § 195(2)

(requiring employers to notify employees in writing of any changes in frequency or rate of

payment seven days prior to the change taking effect); NYLL § 195(3) (employers must "furnish

each employee with a statement with every payment of wages, listing . . . the dates of work . . .

gross wages; deductions; allowances, if any claimed as part of the minimum wage; . . . and net

wages"); NYLL § 195(4) (requiring employers to "establish, maintain and preserve for not less

than six years contemporaneous, true, and accurate payroll records showing for each week

worked the hours worked; the rate or rates of pay and basis thereof, . . . ; gross wages;

deductions; allowances . . . and net wages for each employee").  NYLL § 196-a(a) requires that

employers who fail to maintain the appropriate records "bear the burden of proving that the

complaining employee was paid wages, benefits and wage supplements."  See also Padilla v.

Manlapaz, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009) (explaining in the context of a summary

judgment motion that where an employer's records are inadequate and the employee meets her

burden of proof, "[t]he burden then shifts to the employer to prove by a preponderance of the

evidence that plaintiff was properly paid for the hours worked") (citing NYLL § 196-a).  Thus, under both federal and state laws, defendant-employers have an obligation to keep records, and by virtue of defendants' default, plaintiff's "recollection and estimates of hours worked are presumed to be correct." Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004) (collecting cases); see also Guallpa v. N.Y. Pro Signs, No. 11 CV 3133, 2014 WL 2200393, at *3 (S.D.N.Y. May 27, 2014), report and recommendation adopted, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014).  Therefore, given defendants' failure to present any evidence to dispute the number of hours allegedly worked by plaintiff, the Court can reasonably conclude that plaintiff is entitled to damages for unpaid minimum and overtime wages, as well as spread-of-hours compensation.

## II.    Plaintiff's Requested Damages

Plaintiff requests damages under the FLSA, the NYLL, and New York common law. (Compl. ¶¶ B, C, D, J).  While the defendants' failure to pay minimum wages violates both the FLSA and the NYLL, a plaintiff may only recover damages under one statute, as "double recovery of the same wages and related damages is not permitted." Gonzales v. Gran Israel Pre-Sch., No. 12 CV 6304, 2014 WL 1011070, at *11 (E.D.N.Y. Feb. 5, 2014), report and recommendation adopted, id. at *1-2 (E.D.N.Y. Mar. 14, 2014).  Moreover, courts in this district generally do not award additional damages for breach of contract claims when they are "duplicative of the[] FLSA and NYLL claims." See Mendez v. U.S. Nonwovens Corp., 2 F. Supp. 3d 442, 454 (E.D.N.Y. 2014).  Courts generally award damages under the claim providing the greatest recovery.  See, e.g., Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *23 (E.D.N.Y. Sept. 22, 2017).

In plaintiff's Memorandum of Law, she states that she seeks damages under the NYLL minimum wage provisions, specifically at "$13.00 per hour" from the start of the claim period

"up until December 31, 2018 and $15.00 per hour thereafter," pursuant to NYLL § 652(1). (Pl.'s Mem. at 21-22). However, in her damages calculations chart, plaintiff calculates that she is entitled to $1,000 for her first 40 hours each week, which amounts to a $25 hourly wage, as well as overtime based on this wage. (ECF No. 81-9). Nowhere in her Memorandum of Law or any of the papers submitted does plaintiff explain this discrepancy between her Memorandum and the damages chart. As set forth below, because plaintiff seemingly is requesting different damages amounts, some of which are duplicative and some of which may not be adequately alleged in the Complaint, the Court is unable to recommend damages for anything other than the first three weeks in which she was paid $1,000.

III.   Plaintiff's First Three Weeks of Work

For the reasons more fully explained below, at this time, the Court is only recommending an award of damages based on plaintiff's first three weeks of pay.

A.   Plaintiff's First Three Weeks - Overtime Pay

"To determine whether and to what extent an employee is owed backpay for unpaid minimum wages, the Court first must ascertain the employee's regular hourly rate." Rosendo v. Everbrighten Inc., No. 13 CV 7256, 2015 WL 1600057, at *3 (S.D.N.Y. Apr. 7, 2015), report and recommendation adopted, 2015 WL 4557147 (S.D.N.Y. July 28, 2015). As noted earlier with respect to liability, under both the FLSA and the NYLL, plaintiff's regular rate is calculated by dividing her total weekly pay by 40. For plaintiff's first three weeks of work, where she was paid $1,000 per week for 85 hours of work, her regular rate is $25 per hour, which is above the minimum wage. Therefore, plaintiff is not owed damages for unpaid minimum wages for her first three weeks.

However, plaintiff is owed damages for overtime. Her overtime rate is calculated as one and one-half times the regular rate of $25 per hour, which equals $37.50 per hour. Since she was

not paid overtime for any of the hours worked beyond the initial 40, she is entitled to receive $1,687.50 per week, representing time and half for the 45 hours of overtime worked. In total, for these three weeks, plaintiff is entitled to an award of $5,062.50.

A damages table for plaintiff's first three weeks of work is included below.

| Week | Hours Worked | Reg. Wage Rate | Overtime Rate | Regular Wages Owed | Overtime Wages Owed | Total Owed | Amount Paid | Damages |
|------|--------------|----------------|---------------|--------------------|--------------------|------------|-------------|---------|
| 8/28/18 - 9/3/18 | 85 | $25 | $37.50 | $1,000 | $1,687.50 | $2,687.50 | $1,000 | $1,687.50 |
| 9/4/18 - 9/10/18 | 85 | $25 | $37.50 | $1,000 | $1,687.50 | $2,687.50 | $1,000 | $1,687.50 |
| 9/11/18 - 9/17/18 | 85 | $25 | $37.50 | $1,000 | $1,687.50 | $2,687.50 | $1,000 | $1,687.50 |
| | | | | | | | Total = | $5,062.50 |

B.    Plaintiff's First Three Weeks – Spread-of-Hours Pay

To calculate the amount of spread-of-hours compensation to which plaintiff is entitled, the Court must calculate how many days plaintiff's spread of hours exceeded ten hours during the relevant period. For each day that plaintiff's spread of hours exceeds ten hours, she is entitled to recover an additional hour of compensation "at the basic minimum hourly wage." 12 N.Y.C.R.R. § 146-1.6. For her first three weeks of work, the Court calculates spread-of-hours damages as shown below:

| Date range | Number of Days with Spread of Hours over 10 | Minimum Wage | Spread of Hours Owed |
|------------|---------------------------------------------|--------------|----------------------|
| 8/28/18 - 9/3/18 | 7 | $13 | $91 |
| 9/4/18 - 9/10/18 | 7 | $13 | $91 |
| 9/11/18 - 9/17/18 | 7 | $13 | $91 |
| | | | Total = $273 |

C.    Plaintiff's First Three Weeks - Liquidated Damages

Plaintiff also requests liquidated damages "in the amount equal to the total unpaid compensation" pursuant to 29 U.S.C. §216(b) and NYLL § 663(1). (Pl.'s Mem. at 23). Under the FLSA, an employer who fails to pay his or her employees the minimum wage or overtime compensation required by Sections 206 and 207 is "liable to the . . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless the employer can demonstrate that he or she acted in good faith and had reasonable grounds for believing that the act or omission was not a violation of the FLSA. 29 U.S.C. § 260.

Similarly, under the NYLL, an employee is entitled to liquidated damages "equal to one hundred percent of the total of such underpayments found to be due," unless the employer proves a good faith basis for believing he or she was in compliance with the law. NYLL § 663(1). The burden of demonstrating good faith is on the employer. Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (citing Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)).

The employer's burden of proving good faith "is a difficult one, with double damages being the norm and single damages the exception." Gortat v. Capala Bros., 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)). "While an award of duplicative liquidated damages under the FLSA and NYLL . . . is prohibited, courts within this Circuit have allowed recovery under the statute that provides the greatest relief." De Jesus v. Sea Crest Diner-Rest., No. 17 CV 275, 2018 WL 3742778, at *10 (E.D.N.Y. May 7, 2018) (internal citations and footnote omitted), report and recommendation adopted, 2018 WL 6418893 (E.D.N.Y. Dec. 6, 2018).

Here, defendants have defaulted and therefore have not offered any evidence that their inadequate payments were carried out with a good faith belief that their compensation practices were in compliance with either federal or state law. Thus, this Court finds defendants liable for the liquidated damages.

Accordingly, the Court recommends that plaintiff be awarded a total of $5,335.50 ($5,062.50 in unpaid overtime wages + $273 in spread-of-hours compensation) in liquidated damages.

### D.    Plaintiff's First Three Weeks - Pre-judgment Interest

Plaintiff also seeks pre-judgment interest. (Compl. ¶ K). "In contrast to the FLSA, the NYLL permits the award of both liquidated damages and pre-judgment interest." Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 25. Pre-judgment interest may be awarded at a rate of nine percent per year. N.Y.C.P.L.R. § 5004. In determining pre-judgment interest, "[c]ourts have discretion in choosing a reasonable date from which to calculate" it. Ladino v. Cordova, No. 21 CV 2449, 2024 WL 968898 (E.D.N.Y. Feb. 14, 2024), report and recommendation adopted, 2024 WL 967635 (E.D.N.Y. Mar. 6, 2024). In this district, courts most often select a "median date between the earliest ascertainable date the cause of the action existed and the date the action was filed" from which to calculate pre-judgment interest. Id. at *4 (quoting Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012)).

In total, the recommended wage recovery for plaintiff's first three weeks of employment is $5,335.50. The beginning of plaintiff's claim period is August 28, 2018 (Compl. ¶ 26), and the Complaint was filed on March 24, 2019. Thus, the midpoint is December 10, 2018. Therefore, the Court respectfully recommends that a nine percent annual interest rate on $5,335.50 be applied from December 10, 2018, until the date judgment is entered.

IV.    <u>Plaintiff's Claims for the Remaining Weeks of Work</u>

As explained above, plaintiff adequately alleges NYLL minimum wage violations for each week that she worked, and her Memorandum of Law requests damages under the NYLL minimum wage provisions.  However, in her damages chart, plaintiff asserts that she was owed $25 per hour for her first forty hours of work each week, not just the NYLL minimum wage. Apart from the discrepancy between her memorandum and damages chart regarding which amount she is actually seeking, it is also unclear under what authority plaintiff seeks an hourly rate of pay of $25.

A.    <u>NYLL Promised Wages</u>

"Under the NYLL, a plaintiff can recover for unpaid time at the agreed-upon rate."  <u>Shi v. TL & CG Inc.</u>, No. 19 CV 8502, 2022 WL 2669156, at *8 (S.D.N.Y. July 11, 2022); <u>see also</u> <u>Chen v. Oceanica Chinese Restaurant, Inc.</u>, No. 13 CV 04623, 2023 WL 2815742 at *13 (E.D.N.Y. Feb. 28, 2023) (awarding plaintiffs "recovery of promised wages," which were higher than the New York City minimum wage, because plaintiffs had alleged failure to pay promised wages, pursuant to NYLL § 191).

In her Complaint, plaintiff fails to specifically assert a promised or agreed-upon wage cause of action under NYLL § 191.  Although she alleges in the fact section of the Complaint that she was promised $1,000 a week and defendants failed to pay, she only raises minimum wage, overtime, and spread-of-hours wage claims as the bases for her NYLL damages request. (Compl. ¶¶ 52-78).  "Federal Rule of Civil Procedure 54(c) generally limits recovery on a default judgment to the relief sought in the complaint; the rule provides that '[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.'"  <u>Finkel v. Triple A Grp., Inc.</u>, 708 F. Supp. 2d 277, 282 (E.D.N.Y. 2010).

Even if the facts that she asserts with respect to the breach of contract claim are also construed as a promised wage claim, plaintiff does not provide any case law to support that she is entitled to a promised wage of $25 per hour.  In her Complaint, plaintiff alleges that she was promised $1,000 per week.  (Compl. ¶ 34).  Although plaintiff states that defendants "failed to mention the substantial overtime required by the job," she does not explicitly allege that the agreement was intended to cover only 40 hours per week.  (Id.)  As stated earlier, under the NYLL, there is a "rebuttable presumption that a weekly salary covers only the first forty hours." Pinovi v. FDD Enterprises, Inc., 2015 WL 4126872, at *4.  However, this presumption generally arises in the context of calculating regular wages, and plaintiff has not provided authority for its application in the context of promised wages.

### B.   Breach of Contract Claim

Plaintiff does assert a separate breach of contract cause of action in her Complaint.  For a breach of contract claim, damages arise based on the terms of the contract.  See generally Asesoral Bus. Partners, LLC v. Seatech Worldwide Corp., No. 19 CV 11512, 2021 WL 6755016, at *5 (S.D.N.Y. Dec. 16, 2021), report and recommendation adopted, 2022 WL 1265945 (S.D.N.Y. Apr. 28, 2022).  Plaintiff alleges that her employment contract was $1,000 per week; as noted supra, she does not allege that there was a specific agreement that she would be paid $1,000 for her first forty hours.  (Compl. ¶ 34).  Therefore, in determining the amounts owed based on her breach of contract claims, damages would be limited to the $1,000 per week for each week that she was not paid as promised.  See Blue v. Finest Guard Services, Inc., No. 09 CV 00133, 2010 WL 2927398 at *9 (E.D.N.Y. Jun. 24, 2010) (awarding plaintiff damages on his breach of contract claims based on the terms of the agreement).  Under a breach of contract

claim, however, she would not be entitled to receive overtime pay, spread-of-hours pay or liquidated damages.

Accordingly, plaintiff has not established that, for the weeks when she was paid less than $1,000, she is owed $25 per hour based on her breach of contract claim. Nor has she provided sufficient authority to allow the Court to award her damages under the NYLL based on a promised wage of $25 an hour. Absent further factual support and citation to relevant authority, the Court is unable to recommend an award of damages greater than $1,000 a week under either the NYLL promised wage provision or under her claim for breach of contract. The Court notes that if damages were awarded for these weeks based on the applicable NYLL minimum wage rates in effect at the time, plaintiff's combined damages for minimum wages, overtime, and spread-of-hours pay would exceed any damages available under plaintiff's breach of contract claim which would amount to only $1,000 per week or less considering the two weeks during which plaintiff received some pay.

Accordingly, the Court respectfully recommends that plaintiff's motion for default judgment be denied without prejudice to renew with respect to the weeks where she was paid less than $1,000, but requests regular wages of $25 per hour— September 18, 2018 through October 22, 2018, and October 30, 2018 through the end of the claim period, January 7, 2019 — and, where applicable, bases her overtime wages on this amount. Plaintiff needs to explain the discrepancy between her Memorandum of Law, which requests damages based on the applicable minimum wage rates, and her calculations set forth in her damages chart for these weeks. Plaintiff should also provide any additional facts and relevant authority that authorizes an award of promised wages under the NYLL in the absence of an explicit cause of action being alleged

under Section 191.  Furthermore, she needs to elect whether to proceed under the NYLL for

unpaid wages or under her breach of contract claim.

In summary, the Court respectfully recommends that damages be awarded at this time

only with respect to plaintiff's claims from her first three weeks of work, and that all other

outstanding requests for damages, including attorney's fees and costs,[9] be denied without

prejudice to allow plaintiff to clarify the issues outlined above.

<u>CONCLUSION</u>

In light of the above, the Court respectfully recommends that plaintiff's motion for

default judgment be granted with respect to her first three weeks of work and denied without

prejudice to renew with respect to the additional weeks worked and her attorney's fees and costs

request.  The Court further recommends that plaintiff be awarded: (1) $5,062.50 in overtime pay;

(2) $273 in unpaid spread-of-hours premiums; (3) $5,335.50 in liquidated damages; and (4) pre-

judgment interest on $5,335.50, at a nine percent annual interest rate, starting on December 10,

2018, until the date final judgment is entered.

Plaintiff is directed to promptly serve a copy of this Report and Recommendation on

defendants and file proof of service.

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  <u>See</u>

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a) (providing the

---

[9] Plaintiff requests attorney's fees for co-counsel Taso Pardalis and Joseph Nohavicka, co-managing partners at Pardalis and Nohavicka LLP, as well as for Lina Stillman, founding attorney of Stillman Legal, P.C. (ECF Nos. 81-6, 81-7).  To consider the reasonableness of such attorney's fees, "courts in this Circuit . . . use the prevailing hourly rates in the district where it sits." <u>Perez Campos v. Quentin Mkt. Corp.</u>, No. 16 CV 05303, 2018 WL 9945754, at *9 (E.D.N.Y. Oct. 17, 2018) (citing <u>Simmons v. New York City Transit Authority</u>, 575 F.3d 170, 175-76 (2d Cir. 2009).  In the instant case, although plaintiff's attorneys provide billing records, none of them have submitted information or records detailing their experience.  Therefore, the Court is unable to make a determination as to the reasonableness of their rates.  Furthermore, although plaintiff requests $552 in costs (ECF Nos. 81-9, 82), she does not specify what these costs are or provide any receipts for costs that cannot be judicially noticed.

method for computing time).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

      **SO ORDERED.**

Dated: Brooklyn, New York
       August 20, 2024

                             /s/ Cheryl L. Pollak
                             Cheryl L. Pollak
                             United States Magistrate Judge
                             Eastern District of New York